UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DEJUAN HAYWOOD HAGGINS,

Plaintiff,

v.

MN COMMISSIONER OF CORRECTIONS,
JOHN KING, MICHELLE SMITH, GREG
LINDELL, JESSICA SYMMES, MARY
MCCOMBS, PETER PUFFER, TERRY
JORGESON, KENT GRANDLIENARD, &
TOM SHOLES,

Defendants.

Civil No. 10-1002 (DWF/LIB)

**REPORT AND
RECOMMENDATION**

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the Motion of Plaintiff for Temporary Restraining Order and Motion for Preliminary Injunction. The Plaintiff Dejuan Haggins ("Haggins") appears pro se and the Defendants appear by Jackson Evans, Assistant Minnesota Attorney General. For the reasons set forth below, the Court recommends that Plaintiff's Motion for a Temporary Restraining Order and Motion for Preliminary Injunction be DENIED.

**I.    BACKGROUND**

Plaintiff is a mentally ill prisoner currently imprisoned at MCF-Stillwater. (Haggins Dec. in Supp. of Mot. for TRO [Docket No. 13], ¶ 9). Plaintiff suffers from paranoid schizophrenia and schizoaffective disorder. Initially, prison administrators placed Plaintiff in administrative segregation even though Plaintiff believed he should be placed in the Mental Health Unit. (Id., ¶ 10). According to Plaintiff, no psychologist treated Plaintiff for days after he arrived in

1

administrative segregation. (Id., ¶ 11). The psychologist who eventually treated Plaintiff was a "quasi-intern" who was confused. (Id., ¶ 11). The psychologist told Plaintiff that her supervisor, Peter Puffer, was familiar with Plaintiff's case and refused to place him in the mental health unit. (Id., ¶ 12). After Plaintiff saw a psychologist, he returned to the general population. (Id., ¶ 13). Plaintiff asserts that due to mental health issues, he then acted out causing him to be transferred to disciplinary/punitive segregation. (Id., ¶ 14). Plaintiff maintains that the psychology department at the prison did nothing to help him except to prescribe him strong anti-psychotic medication. (Id., ¶¶ 15, 16). Plaintiff further complains that he never saw a licensed psychologist until Anoka County ordered him to undergo an evaluation for civil commitment proceedings. (Id., ¶ 17). The three psychologists that evaluated him all concluded he was in the "midst of a mental health crisis" and determined that he was not malingering. (Id., ¶¶ 19, 20). The Anoka County judge decided not to civilly commit Plaintiff. (Id., ¶ 23). Even though prison officials knew of the three psychologists' evaluations, prison officials still refused to place Plaintiff in the mental health unit. (Id., ¶ 21). Plaintiff has remained in punitive segregation since July 2010. (Id., ¶ 21).

On the basis of these facts, Plaintiff requests the Court to order a Temporary Restraining Order ("TRO") and Preliminary Injunction.

## II.   STANDARD OF REVIEW

Plaintiff requests both a TRO and a Preliminary Injunction. However, since the Defendants have received notice of the Plaintiff's request for injunctive relief and have filed a response, the Court will consider the present motions as one seeking a Preliminary Injunction. See Jihad v. Fabian, 680 F.Supp.2d 1021, 1030 (D. Minn. 2010).

The separation of powers requires that courts must exercise "judicial restraint" in response to complaints regarding the operation of prisons by executive and legislative branches. See Turner v. Safley, 482 U.S. 78, 84-85 (1987). "Where a state penal system is involved, federal courts have ... additional reason to accord deference to the appropriate prison authorities." Id. at 85. Moreover, "in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995) (quotations omitted).

In determining whether to grant a preliminary injunction, courts consider: "(1) the probability of the movant's success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of the preliminary injunction is in the public interest." Emerson Elec. Co. v. Rogers, 418 F.3d 841, 844 (8th Cir. 2005). "A preliminary injunction is an extraordinary remedy ... and the burden of establishing the propriety of an injunction is on the movant." Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." Id. In addition, "an injunction cannot issue if there is no chance of success on the merits ..." Mid-Am. Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005). In order to obtain a preliminary injunction, Plaintiff must show that he has a "fair chance of prevailing" on his claims. Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008). "In considering the likelihood of the movant prevailing on the merits, a court does not decide whether the movant will ultimately win." PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1143 (8th Cir. 2008).

## III. DISCUSSION

### A. Irreparable Harm to the Plaintiff

In support of his motion, Plaintiff argues that he will suffer irreparable mental and emotional harm if he continues to remain in punitive segregation. Plaintiff asserts that the "sensory deprivation is severe" and that people who "get put back here are never the same again." (Pl.'s Mot. for TRO and Preliminary Inj. [Docket No. 12], p. 2). In addition, Plaintiff claims that punitive segregation aggravates his mental illness. (Id.). As a result of the conditions in punitive segregation, Plaintiff asserts that his Eighth and Fourteenth Amendment Rights are "being violated continuously." (Id. at *3). Plaintiff claims that prisoners are "back here committing suicide, self-mutilation, screaming, getting dragged out of their cell gone wild." Id.

However, the Court finds, that upon the present record, the Plaintiff has not shown that there is a threat of irreparable harm to him if he is not removed immediately from punitive segregation. In order to receive an injunction, Plaintiff must show a <u>cognizable</u> danger of harm. <u>See</u> <u>Goff</u>, 60 F.3d at 521. A cognizable danger means more than the mere possibility of harm. <u>Id</u>. Thus, "injunctive relief is not appropriate where the threat of harm is merely speculative." <u>Cargill, Inc. v. Hartford Accident and Indem. Co.</u>, 531 F.Supp. 710, 715 (D. Minn. 1982).

Plaintiff's affidavit contends that because of the isolation and reduced stimulation of his confinement, his mental health needs are not being met. However, Plaintiff has not provided any specific competent information demonstrating what physical or psychological injuries are resulting from his continuing placement in punitive segregation. Nor has Plaintiff provided any specific, competent information as to what physical or psychological injuries he is likely to suffer in the future such that he faces an <u>immediate</u> danger of the type necessary for the Court to

4

grant a preliminary injunction.[1]  In contrast, Defendants have provided evidence demonstrating that Plaintiff's mental illness has been controlled and, in fact, even improved while he has been placed in punitive segregation.  Plaintiff himself admits that he receives medicine and regularly sees mental health workers.  Defendants have provided evidence showing that Plaintiff receives visits from mental health professionals nearly once a week and regular mental health evaluations.  In addition, Defendants note that before Plaintiff was placed in punitive segregation he was continuously disciplined for behavioral issues, but after being placed in punitive segregation, the number of behavioral issues, which Plaintiff himself alleged are due to his mental illness, have significantly declined.  Thus, upon the present record, Plaintiff has failed to show proof of an irreparable injury.

B.     **Likelihood of Success on the Merits**

Plaintiff argues that many cases prevent prisons from placing mentally ill prisoners in punitive segregation.  Plaintiff relies on the same cases discussed in footnote one above in addition to Inmates of Occoquan v. Barry, 717 F. Supp. 854 (D. D.C. 1989) and Tillery v. Owens, 719 F.Supp. 1250 (W.D. Pa. 1989).[2]  Plaintiff asserts that these cases stand for the

---

[1] In support of his motion, Plaintiff compares the harm he will undergo with the harm alleged in Elrod v. Burns, 427 U.S. 347 (1976), Arnold on Behalf of H.B. v. Lewis, 803 F.Supp. 246 (D. Ariz. 1992), and Casey v. Lewis, 834 F.Supp. 1477 (D. Ariz. 1993) where courts instituted injunctions against prison officials.  However, the Court finds these cases to be inapposite.  The Plaintiffs in Elrod sought a preliminary injunction against the Democratic Party and the County Sheriff to stop discharging employees in the Sheriff's department for being members of the opposing political party.  Thus, Elrod involved political patronage and allegations that prison officials violated the First and Fourteenth Amendment by requiring employees to declare their allegiance to the Democratic Party or face discharge.  The harm sufficient for a preliminary injunction protecting Plaintiffs in Elrod is different from the alleged Eighth Amendment violations for inadequate medical treatment alleged here.  Further, both Arnold and Casey were class actions challenging the widespread failure of prison officials to treat mentally ill patients.  In those cases, the plaintiffs presented significant medical evidence and testimony that the conditions in the prison were wholly inadequate.  Here, in contrast, Plaintiff bases his claim solely on his own summary conclusions that he is not being treated properly.  In addition, in Arnold and Casey, the plaintiffs often went many months without any sort of psychiatric treatment.  In this case, Plaintiff's medical records filed under seal show that Plaintiff received care regularly and usually at least once a week.

[2] Like the cases Plaintiff cites above, Tillery and Occoquan involve widespread allegations of inadequate medical treatment for prisoners with significant medical and testimonial evidence corresponding such allegations.  Here, Plaintiff has provided no competent evidence or testimony other than his own mere allegations that his treatment is inadequate.

5

proposition that lack of mental health staff, lack of mental health policy and overcrowding leads to prisoners being placed in punitive segregation is unconstitutional. (Pl.'s Mot., p. 4).

In order to prevail on a claim of constitutionally inadequate medical care, an inmate must show that 'the prison officials actually knew of but deliberately disregarded [the inmate's serious medical] needs." Plemmons v. Roberts, 439 F.3d 818, 823 (8th Cir. 2006). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). "[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (quotation omitted). In addition, the "plaintiff must show more than negligence, more even than gross negligence." Alberson v. Norris, 458 F.3d 762, 765 (8th Cir. 2006).

In sum, in order to prevail on an Eighth Amendment claim based on improper medical care, "an inmate must show both an objective element, that the deprivation was sufficiently serious, and a subjective element, that the defendant acted with a sufficiently culpable state of mind." Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997). In this case, assuming for the sake of argument that the Plaintiff may be able to show that his mental illnesses constitute a serious medical need, the Plaintiff has not demonstrated that the Defendants acted with deliberate indifference to Plaintiff's medical needs. Plaintiff admits that he was placed on medication and that he regularly sees mental health staff while in punitive segregation. See Roberson v. Goodman, 293 F.Supp.2d 1075, 1081 (D. N.D. 2003) (finding that "[a] psychotic disorder that is being properly addressed with prescription medications does not constitute a serious medical need left untreated and ignored.") Furthermore, Plaintiff's prison medical records, filed under

6

seal, demonstrate that he receives regular visits from a psychologist and sees a medical professional on a nearly weekly basis. While Plaintiff may disagree with the amount of treatment and type of treatment he receives at the prison, such a disagreement may not form the basis of a successful Eighth Amendment claim. See Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994).

### C. Balance of the Harms

In light of the Court's findings and recommendations in Section III, A and B, above, the Court need not reach this factor, however, in the interest of completeness and in order to aid the District Court should objections be raised to this Report and Recommendation, this Court finds that a balancing of the harms favors for the Defendant.

Plaintiff asserts that the Defendants face no hardship from removing the prisoner from punitive segregation into administrative segregation. (Pl.'s Mot., p. 5). Prison officials would not even have to move Plaintiff from his cell, but instead would only have to return his property, turn on his TV, allow him to listen to the radio, allow him more recreational time, and grant him more visits with his family. (Id.). In contrast, Plaintiff maintains that his mental health would improve if he was removed from punitive segregation. (Id., p. 6). As Plaintiff state its, "guys commit suicide on punitive status, guys maintain balance on administrative segregation." (Id.).

However, as outlined above, the Plaintiff has not alleged any specific, immediate injury that he will suffer if this preliminary injunction is not granted. Furthermore, Plaintiff has not competently demonstrated that allowing him more recreational time will significantly improve his mental health. In contrast, finding for the Plaintiff on this motion for a preliminary injunction would require the Court to interfere with the disciplinary decision of prison officials who best

know how to safely and efficiently run a prison. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349-50 (1987); Wickner v. Larson, 2010 WL 98940 at *10 (D. Minn. Jan. 11, 2010).

### D. Public Interest

Finally, as with Section III, C, above, this Court addresses this prong of the analysis out of a desire for completeness.

Plaintiff contends that removing him from punitive segregation status will benefit the public because it is "always in the public interest for prison officials to obey the law." (Pl.'s Mot., p. 6) (citing Duran v. Anaya, 642 F. Supp. 510, 527 (D. N.M. 1986)). In addition, Plaintiff claims that if he continues to remain in punitive segregation, his mental health will continue to deteriorate and when he is eventually released from prison, he will be all the more dangerous to the public. (Pl.'s Mot., p. 8).

The Court finds that the public interest weighs in favor of denying Plaintiff's motion for a preliminary injunction. As the Court noted in Wickner,

> decisions regarding where to house individual inmates have a direct impact on the safety and security of Minnesota Department of Corrections facilities, and Department of Corrections officials are in the best position to make those decisions. Although the public does have an interest in rehabilitating prisoners prior to release, the public has a stronger, more immediate interest in allowing the MCF-OPH staff to continue to implement restrictions necessary to the safety and security of the institution.

2010 WL 98940 at *10. In addition, Plaintiff's allegations that his mental health will continue to deteriorate rendering him a greater danger to the public is merely hypothetical as he has made no competent showing that his mental health will continue to decline (other portions of the record show contrary) if he remains in punitive segregation. Based on the above reasoning in Sections III, A-D, the Court recommends denying Plaintiff's request for a preliminary injunction.

## VI. CONCLUSION

**IT IS HEREBY RECOMMENDED THAT:**

1. Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction (Doc. No. 12) be DENIED;

Dated: February 2, 2011

s/ [signature]
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by February 16, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.