UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DEJUAN HAYWOOD HAGGINS,

Plaintiff,

v.

MN COMMISSIONER OF CORRECTIONS,
JOHN KING, MICHELLE SMITH, GREG
LINDELL, JESSICA SYMMES, MARY
MCCOMBS, PETER PUFFER, TERRY
JORGESON, KENT GRANDLIENARD, &
TOM SHOLES,

Defendants.

Civil No. 10-1002 (DWF/LIB)

**REPORT AND RECOMMENDATION**

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the Motion of Plaintiff for a Temporary Restraining Order and Motion for a Preliminary Injunction. The Plaintiff Dejuan Haggins ("Haggins") appears pro se. For the reasons set forth below, the Court recommends that Plaintiff's Motion for a Temporary Restraining Order and Motion for a Preliminary Injunction be DENIED.

**I.   BACKGROUND**

Plaintiff suffers from paranoid schizophrenia and schizoaffective disorder. (Amended Compl. [Docket No. 15], p. 2.) Plaintiff was initially incarcerated in MCF-St. Cloud in December 2008. (Id). Subsequently, Plaintiff was transferred to MCF-Stillwater. (Id.) While at MCF-Stillwater, Plaintiff was placed in administrative segregation. (Id.) At some point, Plaintiff returned to the general population. (Id.) A short time later, Plaintiff was placed in punitive segregation for assaulting a guard. (Id.) Plaintiff asserts that every time he displayed

1

mentally unstable behavior, he was given more disciplinary segregation time as punishment where he remained on 23 hour a day lock down. (Id.) Plaintiff contends that the disciplinary segregation made his mental health problems worse. (Id.)

Eventually, as a result of an Anoka County court order, three psychologists evaluated Plaintiff. (Id. at 3) According to Plaintiff, all three agreed he needed immediate psychiatric treatment, wasn't competent to consent to taking medication, and that his mental health problems were the cause of the outbursts that placed him in punitive segregation in the first place. (Id.) Anoka County moved to civilly commit Plaintiff as mentally ill and order him to be transferred to the Oak Park Heights Mental Health Unit. (Id.) Ultimately, an Anoka County Judge did not civilly commit Plaintiff on the basis of Plaintiff's attorney's arguments that Plaintiff "would only be committed on paper" and would still remain in disciplinary segregation without proper medical treatment at the prison. (Id.) Thus, Plaintiff remained in the Administrative Control Unit on punitive status. (Id.)

Plaintiff requests injunctive relief. (Id.) Specifically, Plaintiff asks the Court to take him off disciplinary segregation for the remainder of his sentence and place him in administrative segregation, the general population, or the Department of Corrections Mental Health Unit. (Id., p. 7) In addition, in his Statement of Claim, Plaintiff asserts a number of alleged civil rights violations by the Defendants. (Statement of Claim [Docket No. 3]). First, Plaintiff alleges 8th Amendment violations for cruel and unusual punishment because he was given punitive segregation as punishment for his severe mental illness and because he was given inadequate mental health treatment. (Id.) Second, Plaintiff asserts that his due process rights were violated because Defendants forced him to participate in disciplinary proceedings while he was suffering

from severe mental illness without the benefit of counsel even though he was declared incompetent. (Id.)

On March 1, 2011, the Court denied Plaintiff's previous motion for a preliminary injunction and a temporary restraining order. (Order [Docket No. 51]). In Plaintiff's previous motion, the Plaintiff requested that the Court order him to be immediately removed from punitive segregation because the conditions violated the Eighth and Fourteenth Amendments. Specifically, Plaintiff alleged that he was not receiving proper medical treatment and was being punished for being mentally ill because the outbursts leading to his placement in punitive segregation were caused by his mental illness.

Plaintiff's present motion for a temporary restraining order and a preliminary injunction necessarily raises many of the same issues that the Court addressed in its previous order. However, the instant motion relies on a slightly different theory than the Plaintiff's previous motion. While the previous motion dealt primarily with Plaintiff's claim that placing mentally ill prisoners in punitive segregation violates their Eighth Amendment rights, the present motion addresses the reasons why Plaintiff was placed in punitive segregation in the first place. The present motion arises out of the Plaintiff's contention that the Defendants falsified his appearances at disciplinary proceedings, forced him to participate in disciplinary proceedings while he was suffering from severe mental illness, and allowed him to appear without the benefit of counsel at the disciplinary proceedings even though he was declared mentally incompetent. (Pl.'s Mot. for Preliminary Injunction and TRO [Docket No. 55], p. 2). The Plaintiff argues that the disciplinary segregation time he received for conduct violations should be stopped until the instant case is resolved. Id., p. 1. Thus, Plaintiff requests to be removed from disciplinary segregation. Moreover, Plaintiff contends that "justice will be spoiled" if his disciplinary

3

segregation remain in effect because the case will likely not be resolved until he has almost completed his disciplinary segregation punishment. Id., p. 2.

The Court considers the Plaintiff's arguments below.

## II. STANDARD OF REVIEW

Plaintiff requests both a TRO and a Preliminary Injunction. However, since the Defendants have received notice of the Plaintiff's request for injunctive relief, the Court will consider the present motions as one seeking a Preliminary Injunction. See Jihad v. Fabian, 680 F.Supp.2d 1021, 1030 (D. Minn. 2010).

Courts must exercise "judicial restraint" in response to complaints regarding the operation of prisons by the executive and legislative branches. See Turner v. Safley, 482 U.S. 78, 84-85 (1987). "Where a state penal system is involved, federal courts have ... additional reason to accord deference to the appropriate prison authorities." Id. at 85. Moreover, "in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995) (quotations omitted).

In determining whether to grant a preliminary injunction, courts consider: "(1) the probability of the movant's success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of the preliminary injunction is in the public interest." Emerson Elec. Co. v. Rogers, 418 F.3d 841, 844 (8th Cir. 2005). "A preliminary injunction is an extraordinary remedy ... and the burden of establishing the propriety of an injunction is on the movant." Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted). "Failure to show irreparable harm is an independently sufficient ground upon

which to deny a preliminary injunction." Id. In addition, "an injunction cannot issue if there is no chance of success on the merits ..." Mid-Am. Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005). In order to obtain a preliminary injunction, Plaintiff must show that he has a "fair chance of prevailing" on his claims. Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008). "In considering the likelihood of the movant prevailing on the merits, a court does not decide whether the movant will ultimately win." PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1143 (8th Cir. 2008).

### III. DISCUSSION

#### A. Likelihood of Success on the Merits

Plaintiff asserts that he will succeed on the merits because counsel was not afforded to him as a mentally ill prisoner as required by the Due Process Clause. (Pl.'s Mot., p. 4). Moreover, Plaintiff contends that since psychiatrists have found him mentally ill to the point of legal incompetency, his argument that the Defendants violated his due process rights by allowing him to face disciplinary hearings without the assistance of counsel is even more likely to succeed. Id. Furthermore, Plaintiff contends that the Defendants falsified his appearances at due process proceeding to avoid dealing with the Plaintiff. Id.

The Fourteenth Amendment prohibits the deprivation of life, liberty or property without due process of law. "While it is true that the constitutional protections, which are encompassed by the Due Process Clause, do not abate at the time of imprisonment, it is also true that 'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" (King v. Dingle, 702 F.Supp.2d 1049, 1075 (D. Minn. 2010) (citing Sandin v. Conner, 515 U.S. 472, 485 (1995)) (internal citations omitted). To allege a procedural due process claim an inmate must

5

demonstrate that he has been deprived of a constitutionally protected liberty interest. Id. Such a constitutionally protected liberty interest exists when the prisoner shows that he has suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Moreover, deprivations giving rise to Due Process rights are those which "work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996).

In the instant case, the Plaintiff contends that his placement in punitive segregation without the benefit of an attorney at his hearing constitutes a violation of his constitutional due process rights. However, courts routinely hold that a transfer to segregated confinement is not an "atypical and significant hardship" that would create a protected liberty interest triggering due process protection. See Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002); Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) (finding denial of visitation, exercise privileges, and religious services during 37 day segregation did not give rise to a protected liberty interest); Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997) (determining that prisoner had no constitutionally protected liberty interest in remaining in less restrictive prison environment); Kennedy v. Blankenship, 100 F.3d 640, 642 n. 2, 643 (8th Cir. 1996) (holding that punitive isolation was not atypical and significant deprivation even though prisoner faced restrictions on mail, telephone access, visitation, and commissary privileges); King v. Dingle, 702 F.Supp.2d at 1075 (D. Minn. 2010) (finding 6 month segregation sentence not to constitute a dramatic departure from prison life); Bunch v. Long, 2008 WL 5082861 at *4 (W.D. Mo. Nov. 24, 2008) (holding that 22 months in administrative segregation did constitute an atypical or significant hardship); Wilson v. Harper, 949 F.Supp. 714, 723 (S.D. Iowa 1996) (finding that 11 months in

6

segregation, including 6 months of punitive segregation was not a protected liberty interest giving rise to Due Process Rights).

      Likewise, in the instant case, the Plaintiff has not shown that the segregation he received was so "atypical and significant" to trigger the protections of the Due Process clause. Plaintiff contends that he has been in punitive segregation for 19 months. (Amended Comp., p. 7). Numerous courts have found that being placed in segregation for similar lengths of time were not an atypical and significant hardship. See Hemphill v. Delo, 1997 WL at *2 (8th Cir.1997) (holding that more than 300 days in segregated confinement, by itself, was not sufficient to find a protected liberty interest); Griffin v. Vaughn, 112 F.3d 703, 708 (3rd Cir. 1997) ("we believe that exposure to the conditions of administrative custody for periods as long as 15 months falls within the expected parameters of the sentence imposed ... by a court of law," and thus prisoner's "commitment to and confinement in administrative custody did not deprive him of a liberty interest and ... he was not entitled to procedural due process protection") (internal citations omitted); Jones v. Baker, 155 F.3d 810, 812-13 (6th Cir. 1998) (determining that two and one-half years in administrative segregation deemed not to be an atypical and significant hardship); Rahman X v. Morgan, 300 F.3d 970, 973-74 (8th Cir. 2002) (twenty-six months of segregated confinement was not "atypical and significant hardship"). Jordan v. Federal Bureau of Prisons, 191 Fed.Appx. 639, 652-53 (10th Cir. 2006) (upholding summary judgment that dismissed prisoner's due process claim, because five years in administrative detention was not an atypical or significant hardship in relation to the ordinary incidents of prison life).[1]

---

[1] The Court recognizes that there are some factual differences between the instant case and those cited. Here, Plaintiff has allegedly been in punitive segregation for 19 months rather than administrative segregation. While both are types of segregation, prisoners in punitive segregation face greater limitations on their freedom. However, the Court still finds that the cases are instructive to the Plaintiff's claim.

7

Yet, in some instances, however, the imposition of segregated confinement can require due process protection. In fact, the Eighth Circuit has noted that "[t]he length of time a prisoner's segregation is a significant factor in the determination of whether confinement is an atypical and significant hardship." Herron v. Wright, 1997 WL 292333 at *1 (8th Cir. 1997); Williams v. Norris, 277 Fed.Appx. 647, 648-649 (8th Cir. 2008) (finding a twelve years in administrative segregation confinement was an atypical and significant hardship due to the particular restrictions imposed in relation to the segregation); Herron v. Schriro, 11 Fed.Appx. 659, 661-662 (8th Cir. 2001) (determining that the District Court found that the inmate's "lengthy confinement, for more than thirteen years, in administrative segregation, resulted in an atypical and significant hardship in relation to the ordinary incidents of prison life"); Wilkinson v. Austin, 545 U.S. 209, 217, 223-25 (2005) (determining that an atypical and significant hardship existed at "supermax" prison where, in addition to conditions similar to most in solitary confinement, placement is indefinite, is reviewed only annually after initial 30-day review, and disqualifies otherwise eligible inmate for parole consideration).

However, Plaintiff's current case can be distinguished from these instances where the Court found that the segregation status constituted an "atypical and significant hardship." Plaintiff's Amended Complaint shows that he has been placed in punitive or disciplinary segregation on a number of occasions for disciplinary violations. The exhibits submitted in support of Plaintiff's claim demonstrate that he has been placed on punitive segregation for numerous separate and distinct disciplinary violations and has not been left in punitive segregation without at least periodic hearings to address subsequent disciplinary violations.[2]

---

[2] The Court cautions, however, that its decision as to this issue is only for the purposes of the preliminary injunction motion and should not be viewed as a finding that the Defendant's actions in fact complied with due process requirements. The Court simply states that as the case is now presented, the Plaintiff has not demonstrated such a "significant and atypical hardship" to justify the extraordinary remedy of a preliminary injunction.

(Haggins Aff. [Docket No. 2], Exs. 17, 19, 20). See Williams, 277 Fed.Appx. at 647 (finding that due process required periodic review of prisoners' administrative segregation status). Moreover, Haggins has not alleged that he has suffered the loss of good time credits or is forced to endure a longer prisoner sentence as the result of the disciplinary proceeding. King v. Dingle, 702 F.Supp.2d 1049, 1075 (D. Minn. 2010) (considering it significant that prison sentence was not extended when deciding whether prisoner suffered an atypical or insignificant hardship).

The Court finds that on the basis of Plaintiff's sparse 8 page motion for a preliminary injunction, the Court cannot say that he will likely succeed on the merits. Based on the submissions before the Court, the Plaintiff has not sufficiently demonstrated that he will succeed on the merits regarding his claim that his placement in punitive segregation constitutes such an "atypical and significant" hardship triggering due process rights.

Moreover, even if the Court were to find that Plaintiff's placement in punitive segregation in and of itself triggers due process protection, Plaintiff still would be unlikely to succeed on the merits of his claim that his mental illness requires him to have counsel present at his disciplinary hearings. Before being punished for these violations, Plaintiff himself admits that he went though the discipline process. (Amended Compl, p. 3). However, Plaintiff complains that due process requires the presence of counsel at such hearings.

The Supreme Court has stated that the assistance of counsel in prison disciplinary violations is only necessary in certain cases such as "[w]here an illiterate inmate is involved . . . or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." Wolff v. McDonnnell, 418 U.S. 539, 570 (1974). Thus, prisoners do not enjoy a blanket right to counsel in disciplinary proceedings. Instead, the right is reserved for a small class of inmates. Brown v.

9

Frey, 889 F.2d 159, 169 (8th Cir. 1989).  Here, Plaintiff does not allege that the questions raised at the disciplinary hearing were complex or novel.  Moreover, after examining the limited exhibits submitted by the Plaintiff in support of his claim, the Court does not find the disciplinary issues raised in the attachments to the Plaintiff's Complaint to be so complex such that they would require the guidance of counsel.   Nor has Plaintiff alleged he is illiterate.  In contrast, throughout these proceedings, Plaintiff has presented himself articulately and demonstrated that he is readily capable of representing himself.   In short, Plaintiff has proven himself able to understand the issues presented in this case and the same can likely be said of any disciplinary proceedings.

To the extent Plaintiff argues that his mental illness separately requires that he have the assistance of counsel, the Court is aware of no case laying out a blanket rule requiring mentally ill prisoners to receive the assistance of substitute counsel during disciplinary hearings.  In fact, the Eighth Circuit previously held that a prisoner was not entitled to counsel substitute based on his borderline intellectual functioning, poor comprehension, and limited ability to represent himself in a due process case.  Kulow v. Nix, 28 F.3d 855, 857-858 (8th Cir. 1994); see also Roque v. Ault, 2009 WL 1052729 at *3 (N.D. Iowa Apr. 20, 2009) (finding mental health issues did not require appointment of counsel during disciplinary proceedings because the plaintiff did not show that his mental health condition "made it difficult for him to comprehend the disciplinary charges against him, limited his ability to communicate, or otherwise limited his ability to respond to non-complex charges and proceedings").

The Plaintiff's argument that the Defendants stated that he was present at disciplinary hearings even though he actually was not there is potentially more troubling.  However, the Court finds that the exhibits submitted by the Plaintiff in support of his Complaint show that as a

threshold matter that the Plaintiff was present. (Haggins Aff. [Docket No. 2], Exs. 17, 19, 20). Therefore a factual dispute remains over whether Plaintiff was in fact at disciplinary hearings, and Plaintiff's bald assertions that he was not actually at some of the hearings are not enough to demonstrate a likelihood of success on the merits as necessary for the Court to grant the "extraordinary remedy" of a preliminary injunction. Calvin Klein Cosmetics Corp. v. Lenox Labs, Inc., 815 F.2d 500, 503 (8th Cir. 1987). "Much of the record is comprised of Plaintiff's subjective opinions" which do not "strongly support" the Plaintiff's arguments in favor of granting a preliminary injunction. Parreant v. Schotzko, 2001 WL 1640137 at *7 (D. Minn. Sept. 30, 2001). As such, the Court determines that the Plaintiff's likelihood of success on the merits based on the mere allegations in the Plaintiff's Complaint and limited motion papers, without more, is low.

      **B.     Irreparable Harm to the Plaintiff**

Plaintiff contends that he will suffer irreparable harm if the Court does not impose a preliminary injunction. In support of this assertion, the Plaintiff argues that his punitive segregation sentences are unconstitutional, but continue to be in place. (Pl.'s Mot., p. 3). Furthermore, by the time the proceedings are complete in this case, the Plaintiff maintains that he will have completed 90% of his wrongful time in punitive segregation. Id. Essentially, Plaintiff contends that he will prevail on his claim that his placement in punitive segregation is unconstitutional such that that if he remains in punitive segregation while this dispute is ongoing, his rights will be unnecessarily violated.

The Court finds that, upon the present record, the Plaintiff has not shown that there is a threat of irreparable harm to him if he is not removed immediately from punitive segregation. In order to receive an injunction, Plaintiff must show a cognizable danger of harm. See Goff, 60

F.3d at 521. A cognizable danger means more than the mere possibility of harm. Id. Thus, "injunctive relief is not appropriate where the threat of harm is merely speculative." Cargill, Inc. v. Hartford Accident and Indem. Co., 531 F.Supp. 710, 715 (D. Minn. 1982).

Here, Plaintiff contends that his initial placement in punitive segregation violates his constitutional rights. According to the Plaintiff, because the disciplinary proceedings violated due process, his present placement in punitive segregation constitutes a constitutional violation that will force him to suffer irreparable injury. However, as discussed above, Plaintiff's contention that his constitutional due process rights are being violated has not been shown to be likely to succeed on the merits. As such, Plaintiff cannot assert an irreparable injury on the basis of the alleged constitutional violations.[3]

Therefore, the second factor in the preliminary injunction analysis also weighs in favor of the Defendants.

### C. Balance of the Harms

Plaintiff asserts that the "balance of hardship clearly favor the Plaintiff." (Pl.'s Mot., p. 4). Plaintiff contends that the Defendants "do not have immunity against valid preliminary injunctions simply because they are prison management." Id.

Plaintiff has not met his heavy burden as to this element of the preliminary injunction and demonstrated that the balance of harms tips in his favor. In fact, Plaintiff has not even engaged in a cursory discussion as to what significant harm he would suffer if this motion was denied as compared to the limited harms the Defendants would suffer if the motion was granted. Additionally, the Court notes that, as outlined above, Plaintiff's contention that he will continue

---

[3] To the extent the Plaintiff argues that the conditions he faces while in punitive segregation violate his constitutional rights, the Court already decided in its previous order that the Plaintiff did not allege enough facts showing that "he is likely to suffer in the future such that he faces an immediate danger of the type necessary for the Court to grant a preliminary injunction." (Report & Recommendation [Docket No. 45], p. 4-5).

12

to suffer a deprivation of constitutional rights if this injunction is not granted is meritless because he has not demonstrated a sufficient prospect of success on the merits of his claim of violation of constitutional due process rights to justify the "extraordinary remedy" of a preliminary injunction.

In contrast, on the limited record in support of the present motion, finding for the Plaintiff on this motion for a preliminary injunction would require the Court to interfere with the disciplinary decision of prison officials who best know how to safely and efficiently run a prison. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349-50 (1987); Wickner v. Larson, 2010 WL 98940 at *10 (D. Minn. Jan. 11, 2010).

For these reasons, the Court finds that the balance of harms favors the Defendants.

**D. Public Interest**

Plaintiff contends that removing him from punitive segregation status will benefit the public because the public has a "vested interest in correctional departments and facilities that are just and obey their constitution to the fullest, as much as a prison facility can." (Pl.'s Mot., p. 6). The Plaintiff further asserts that the Court should not allow the Defendants to act in violation of this Constitution on the basis of their claims that facility security necessitates their actions. Id.

The Court finds that the public interest weighs in favor of denying Plaintiff's motion for a preliminary injunction. As the Court noted in Wickner,

> decisions regarding where to house individual inmates have a direct impact on the safety and security of Minnesota Department of Corrections facilities, and Department of Corrections officials are in the best position to make those decisions. Although the public does have an interest in rehabilitating prisoners prior to release, the public has a stronger, more immediate interest in allowing the MCF-OPH staff to continue to implement restrictions necessary to the safety and security of the institution.

2010 WL 98940 at *10.

Based on the above reasoning in Sections III, A-D, the Court recommends denying Plaintiff's request for a preliminary injunction.

## VI.  CONCLUSION

**IT IS HEREBY RECOMMENDED THAT:**

1. Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction (Doc. No. 55) be DENIED;

Dated: July 5, 2011                    s/Leo I. Brisbois

                                                    Leo I. Brisbois
                                                    U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by July 19, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.