UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DEJUAN HAYWOOD HAGGINS,

                Plaintiff,

v.

MN COMMISSIONER OF CORRECTIONS,
JOHN KING, MICHELLE SMITH, GREG
LINDELL, JESSICA SYMMES, MARY
MCCOMBS, PETER PUFFER, TERRY
JORGESON, KENT GRANDLIENARD, &
TOM SHOLES,

                Defendants.

Civil No. 10-1002 (DWF/LIB)

**REPORT AND
RECOMMENDATION**

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), on cross motions for summary judgment. The Plaintiff Dejuan Haggins ("Haggins") appears pro se. For the reasons set forth below, the Court recommends that Defendants' Motion for Summary Judgment be GRANTED and Plaintiff's Motion for Summary Judgment be DENIED.

I.  **BACKGROUND**

    A.  **Facts Relating to Plaintiff**

Plaintiff suffers from paranoid schizophrenia and schizoaffective disorder. (Amended Compl. [Docket No. 15], p. 2.) Initially, Plaintiff was incarcerated in MCF-St. Cloud in December 2008. (Id). Plaintiff has been incarcerated at MCF-Oak Park Heights (MCF-OPH) and MCF-Stillwater since January 2009. (McComb Aff. [Docket No. 41], Ex. A). While at MCF-OPH and MCF-Stillwater, Plaintiff spent time in the administrative control unit. Id.

Throughout his time incarcerated, Plaintiff has received a number of disciplinary violations. (Green Aff. [Docket No. 80], Ex. D). From December 2008 to the filing of Plaintiff complaint on March 29, 2010, Plaintiff has been involved in 19 separate disciplinary incidents. Id. These violations have resulted in lengthy stays in disciplinary segregation for the Plaintiff. Id. One violation that occurred on November 23, 2009 required Plaintiff to spend 240 days in disciplinary segregation. Id. Other punishments, however, have been shorter. Plaintiff only received five days in administrative segregation for one of his violations. Id.[1]

Before three of the hearings on major disciplinary violations, Plaintiff's mental health was reviewed pursuant to prison policy. Id., Ex. F. Each review found Plaintiff to be competent to continue with the proceedings. Id.

One of Plaintiff's disciplinary violations resulted in a state criminal charge. On May 15, 2009, Plaintiff was charged with assaulting a correctional officer. (Evans Aff. [Docket No. 81], Ex. A). In connection with that case, Plaintiff was ordered to undergo a Rule 20 competency evaluation. Id. On October 14, 2009, a competency hearing was held. Id. Plaintiff also underwent civil commitment proceedings in Anoka County. (Pl's Exhibits). Sometime after that hearing, Plaintiff was granted permission to proceed pro se in his defense and a guilty verdict was entered. See State v. Haggins, 798 N.W.2d 86 (Minn. Ct. App. 2011).

The Administrative Control Unit ("ACU") contains inmates placed on disciplinary segregation status due to disciplinary violations. (McComb Aff, ¶ 4). Additionally, the ACU houses inmates who are on administrative segregation status meaning that they are segregated for reasons other than discipline. Id. While on disciplinary segregation status, prisoners are entitled to privileges based on how long they have gone without receiving a disciplinary violation.

---

[1] Plaintiff's major disciplinary violations have also added approximately 370 days to his incarceration. (Green Aff.)

(McComb Aff., Ex.C). Prisoners on administrative segregation status receive additional visitation privileges, more recreation opportunities, and additional canteen privileges. Id. The differences between administrative segregation and the least restrictive phase of disciplinary segregation is one hour of additional visitation, one additional hour of recreation, five additional dollars for canteen purchases, television privileges and one extra fifteen minute phone call. Id. ¶ 5; Ex. C. The most restrictive phase of disciplinary segregation imposes additional restrictions. Id.

Because Plaintiff committed 19 disciplinary infractions in 2009, including 7 major infractions, Plaintiff spent significant time on disciplinary segregation status. Id. Ex. D. However, in 2010, Plaintiff was discipline free with the exception of one incident in August. Id.

While housed in the ACU, Plaintiff has received regular mental health services including therapy, psycho-education, and medication management. (Medchill Aff., [Docket No. 42] ¶ 11; Ex. B). Plaintiff is currently diagnosed with a mood disorder and narcissistic personality disorder. (Second Puffer Dec., ¶ 9). Plaintiff has never been diagnosed with a condition that affected his functional ability to the extent that he could not understand a disciplinary hearing. Id. ¶ 7.

Plaintiff, in his complaint, views the facts somewhat differently. He claims that no psychologist treated Plaintiff for days after he arrived in administrative segregation. (Am. Compl ¶ 11). The psychologist who eventually treated Plaintiff was a "quasi-intern," Paige Berg, who was confused. Id., ¶ 11. Ms. Berg told Plaintiff that her supervisor, Peter Puffer, was familiar with Plaintiff's case and his mental illness and refused to place him in the mental health unit. Id., ¶ 12. Plaintiff asserts that due to mental health issues, he then acted out causing him to be transferred to disciplinary/punitive segregation. Id., ¶ 14. Plaintiff maintains that the

psychology department at the prison did nothing to help him except to prescribe him strong anti-psychotic medication. Id., ¶¶ 15, 16.

Eventually, as a result of an Anoka County court order, three psychologists evaluated Plaintiff. Id. at 3. According to Plaintiff, all three agreed he needed immediate psychiatric treatment, wasn't competent to consent to taking medication, and that his mental health problems were the cause of the outbursts that placed him in punitive segregation in the first place. Id. Anoka County moved to civilly commit Plaintiff as mentally ill and order him to be transferred to the Oak Park Heights Mental Health Unit. Id. Ultimately, according to Plaintiff, an Anoka County Judge did not civilly commit Plaintiff on the basis of Plaintiff's attorney's arguments that Plaintiff "would only be committed on paper" and would still remain in disciplinary segregation without proper medical treatment at the prison. Id.

**B.      Prison Policies**

Under Minn. Stat. § 244.04, subds. 1 and 2, the DOC has the authority to create regulations governing inmate behavior. Pursuant to this authority, the DOC has created Offender Discipline Regulations outlining what behavior may result in disciplinary penalties. (Green Aff. [Docket No. 80], Ex. A). Punishments for disciplinary violations include, but are not limited to, loss of privileges, disciplinary segregation, and restrictive disciplinary segregation. Id., Ex. A, p. 3). The policy includes descriptions of the appropriate punishment for each violation. Id., Ex. A.

DOC policy 303.010 creates procedures to determine whether an inmate violated the disciplinary regulations and whether punishment is appropriate. Id., Ex. B, p. 1. The policy includes the right to a hearing and notice of the allegations including the regulation at issue, the maximum penalty, and the tentative hearing date. Id., Ex. B., p. 3. Inmates can waive hearings

by pleading guilty. Id., Ex. B, p. 4. Prisoners can also choose not to be present at a hearing. Id., Ex. B, pp. 4-5. The policy further provides that a hearing will not continue until the hearing officer is convinced that the prisoner can understand and fully participate in the hearing. Id., Ex. B, pp. 4-6. Hearing officers refer inmates who are suspected of suffering from a mental illness rendering them unable to understand the proceedings to the mental health services for an individualized assessment before proceeding with the disciplinary hearing. Id., Ex. B, pp. 4, 6.

Prisoners have the opportunity to call witnesses for major hearings, but not minor hearings. Id., Ex. B, pp. 5-6. Inmates may retain an attorney to represent them at a major hearing or request a facility representative to help prepare for the hearing. Id., Ex. B,

Inmates receive the hearing officer's decision orally at the hearing and receive a written copy. Id., Ex. B, p. 5. Inmates may appeal the decision. Id., Ex. B, p. 7.

After placed in the ACU, prisoners receive regular evaluations by mental health staff. (Medchill Aff. [Docket No. 42], ¶ 7). Prison policies provide that prisoners are evaluated after 30 days in the ACU and are then evaluated at least once every 90 days. Id. However, offenders receiving psychotherapy and medication are seen more often. Id

## C.     Plaintiff's Claims

Plaintiff requests injunctive relief. Specifically, Plaintiff asks the Court to take him off disciplinary segregation for the remainder of his sentence and place him in administrative segregation, the general population, or the Department of Corrections Mental Health Unit. (Am. Compl., p. 7) In addition, in his Statement of Claim, Plaintiff asserts a number of alleged civil rights violations by the Defendants. (Statement of Claim [Docket No. 3]). First, Plaintiff alleges 8th Amendment violations for cruel and unusual punishment because he was given punitive segregation as punishment for his severe mental illness and because he was given inadequate

mental health treatment.  <u>Id</u>.  Second, Plaintiff asserts that his due process rights were violated

because Defendants forced him to participate in disciplinary proceedings while he was suffering

from severe mental illness without the benefit of counsel even though he was declared

incompetent.  <u>Id</u>.

Presently before the Court is Plaintiff's Motion for Summary Judgment and the

Defendant's Motion for Summary Judgment.  The Court considers the parties' arguments

regarding the motions below.

## II.    STANDARD OF REVIEW

Summary Judgment is appropriate only when the evidence demonstrates that there is no

genuine issue of material fact such that the moving party is entitled to judgment as a matter of

law.  Fed. R. Civ. Pro. 56(a); <u>Smutka v. City of Hutchinson</u>, 451 F.3d 522, 526 (8th Cir. 2006).

A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is

"genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving

party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party bears the burden of bringing forward sufficient admissible evidence to

establish that there are no genuine issues of material fact and that the movant is entitled to

judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The evidence

must be viewed in the light most favorable to the nonmoving party, and the nonmoving party

must be given the benefit of all reasonable inferences to be drawn from the underlying facts in

the record.  <u>Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.</u>, 950 F.2d 566, 569

(8th Cir. 1991).  However, the nonmoving party may not rest on mere allegations or denials in

their pleadings, but must set forth specific admissible evidence-based facts showing the existence

of a genuine issue. <u>Forrest v. Kraft Foods, Inc.</u>, 285 F.3d 688, 691 (8th Cir. 2002).  "Naked

assertions, unsubstantiated by the record," made in rebuttal do not amount to sufficient evidence to preclude summary judgment. Dutton v. University Healthcare Sys., L.L.C., 136 Fed. Appx. 596 (5th Cir. 2005) (unpublished decision); see also Simms v. McDowell, No. 4:08cv-60-M, 2009 WL 3160353, at *5 (W.D. Ky. Sept. 25, 2009) (holding that speculation that someone lied in an affidavit is "insufficient to defeat a motion for summary judgment."). "A properly supported motion for summary judgment is not defeated by self-serving affidavits." Frevert v. Ford Motor Co., 614 F.3d 466, 473 (8th Cir. 2010) (quoting Bacon v. Hennepin Cnty Med. Ctr., 550 F.3d 711,716 (8th Cir. 2008)). "Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Id. at 473-74.

The movant is entitled to summary judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

## III.    DUE PROCESS CLAIMS

Plaintiff's due process claims arise out of Defendants' alleged "railroading" of the Plaintiff through disciplinary hearings in 2009. (Pl's Mem. in Opp'n [Docket No. 105], p. 3). While Plaintiff does not specifically explain his argument in support of his due process claim, he generally asserts that every time he displayed mentally unstable behavior, he was given more disciplinary segregation time as punishment to the point where he remained on 23 hour a day lock down. (Amended Compl. [Docket No. 15], p. 2). Plaintiff contends that the disciplinary segregation made his mental health problems worse. Id.

Plaintiff appears to argue that his due process rights were violated because Defendants forced him to participate in disciplinary hearing proceedings while he was suffering from severe mental illness without the benefit of counsel even though he was declared incompetent. (Statement of Claim [Docket No. 3]).

However, the Defendants argue that the Plaintiff has not asserted enough admissible evidence to create a genuine issue of material fact in support of his procedural due process claims. Defendants raise four arguments regarding due process in support of their motion. First, Defendants maintain that Plaintiff's claim is barred by Heck v. Humphrey,512 U.S. 477, 486-87 (1994). Second, Defendants contend that Plaintiff has not demonstrated a protected liberty interest in remaining in the general population. Third, Defendants contend that Plaintiff's due process rights were not violated. Finally, Defendants contend that the Plaintiff failed to exhaust his administrative remedies. The Court considers these arguments below.

**A.      Whether Heck v. Humphrey Bars Plaintiff's Due Process Claims**

The Defendants raise the same argument the Court previously rejected in denying their motion to dismiss. (Docket No. 46). In support of their renewed argument, Plaintiffs provide an affidavit stating that Plaintiff's sentence was extended 370 days because of disciplinary violations in 2009 and 2010. (Green Aff., Ex. E).

However, the Court finds that because the Defendants have not provided any new evidence or arguments beyond those submitted in support of their previous motion to dismiss, the Court again must deny their argument that Plaintiff's due process claims are barred under Heck.

As this Court previously noted, the exclusive remedy for a state prisoner challenging the fact or duration of his confinement is a petition for habeas corpus. Preiser v. Rodriguez, 411

U.S. 475, 488-90 (1973).  An action that "call[s] into question the lawfulness of [a] conviction or confinement" is not cognizable under § 1983.  Heck v. Humphrey, 512 U.S. 477, 483 (1994). Under this rule, courts consider whether a judgment in favor of the plaintiff would imply that his underlying conviction or sentence is invalid.  Id. at 487.

This rule has been extended to apply to prison disciplinary sanctions affecting the fact or duration of confinement.  See Edwards v. Balisok, 520 U.S. 641 (1997).  In Edwards, the court reasoned that Heck's "favorable termination rule" applies to challenges made under § 1983 to both the procedures used in disciplinary proceedings and to the results of such proceedings that deprive prisoners of good time credits.  Id. at 648.  However, the Supreme Court has also noted that Heck does not apply "categorically to all suits challenging prison disciplinary proceedings." Muhammad v. Close, 540 U.S. 749, 754 (2004).  Instead, "the incarceration that matters under Heck is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules."  Id. at 751 n. 1.

As the Court stated in its prior Order, it is unclear, "however, whether a confinement made pursuant to a prison disciplinary proceeding, such as being placed in punitive segregation, could properly be contested under § 1983 where the prisoner simply challenges being placed in a stricter level of confinement rather than losing good time credits."  (Order [Docket No. 46], p. 6). In making its decision, the Court relied on a number of decisions holdings that § 1983 was the proper vehicle for prisoners, such as Plaintiff, contesting their placement in disciplinary segregation on the basis of alleged due process violations that occurred during disciplinary proceedings.  Id., p. 6-7 (citing Jenkins v.Haubert, 179 F.3d 19, 21 (3rd Cir. 1999); Torres v. Fauver, 292 F.3d 141, 150 (3rd Cir. 2002); Peralta v. Vasquez, 467 F.3d 98, 103 (2nd Cir. 2006); Smith v. Villapando, 286 Fed.Appx. 682, 686 (11th Cir. 2008)).   The Court noted that "neither

of Plaintiff's claim would challenge the original judgment or the length of his original sentence, but instead only contest the validity of the disciplinary proceedings (ie., the conditions of his confinement) as allowed under <u>Jenkins</u> and its progeny." <u>Id</u>., p. 7.

Like their earlier motion to dismiss, Defendants have once again not demonstrated that Plaintiff challenges his original judgment or his sentence length in his Amended Complaint. <u>See</u> <u>Muhammad</u>, 540 U.S. at 754 (concluding that <u>Heck</u> does not apply to § 1983 actions disputing "prison disciplinary proceedings in the absence of any implication going to the fact or duration of [the] underlying sentence"). Instead, Plaintiff merely asks the Court to issue an injunction removing him from punitive segregation. Such a claim challenges the conditions of Plaintiff's confinement rather than its length,

Defendants argue that their current motion is different from their prior motion because now they have offered evidence showing that Plaintiff's sentence was lengthened by the disciplinary violations. (Defs' Mem., p. 10). Thus, any ruling in favor of the Plaintiff on his due process claims necessarily calls into question the disciplinary violations and the length of Plaintiff's sentence. <u>Id</u>. at p. 11.

However, Defendants have not demonstrated that the disciplinary violations that the Plaintiff is challenging led to an increase in his confinement. The Court notes that based on the evidence in the record it is unclear what specific disciplinary violations led to the additional sentence. The records submitted by the Defendants in support of this proposition do not appear to be disciplinary violations adjudicated through the prison disciplinary system, but instead seem to be for separate criminal violations adjudicated in Minnesota state court for actions taken in and out of prison. The first violation appears to be a state conviction in Washington County, MN arising out of Plaintiff's 2009 assault of a guard. (Green Aff., Ex. E, p. 1). The second violation

is not related to Plaintiff's time in prison at all and instead resulted from a 2007 attempted armed hotel robbery. (Green Aff., Ex. E, p. 3). Defendants consistently refer to a 2010 violation resulting in a lengthier sentence, but such records are not found within Exhibit E of the Green Affidavit cited in support of that contention. More to the point, Plaintiff is not challenging the criminal convictions found in Exhibit E of the Green Affidavit, but is instead challenging separate prison disciplinary violations that resulted in his placement in punitive segregation. Defendants have not submitted any evidence showing that these violations resulted in a lengthier sentence. Nothing in any of Plaintiff's numerous submissions in this case even remotely suggests that he is challenging any of his state court convictions. Simply because the actions giving rise to the separate state court convictions occurred in prison does not mean that Plaintiff necessarily challenges their validity when bringing a § 1983 claim for alleged constitutional violations arising out of prison disciplinary hearings, and Plaintiff has consistently represented in his submissions in this case that he is only challenging a condition of confinement: his placement in punitive segregation issued as punishment for prison disciplinary violations.

Since Plaintiff is challenging the conditions and not the fact or duration of his confinement, the Court concludes that Plaintiff's due process claims are not barred by Heck.

**B.      Whether Plaintiff has Demonstrated a Protected Liberty Interest**

The Fourteenth Amendment prohibits the deprivation of life, liberty or property without due process of law. "While it is true that the constitutional protections, which are encompassed by the Due Process Clause, do not abate at the time of imprisonment, it is also true that 'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" King v. Dingle, 702 F.Supp.2d 1049, 1075 (D. Minn. 2010) (citing Sandin v. Conner, 515 U.S. 472, 485 (1995))

(internal citations omitted).  The Due Process Clause does not protect a prisoner from every modification in the condition of confinement that results in an adverse impact on the prisoner. Sandin, 515 U.S. at 484-87.  To allege a procedural due process claim, an inmate must demonstrate that he has been deprived of a constitutionally protected liberty interest.  Id.  Such a constitutionally protected liberty interest exists when the prisoner shows that he has suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484.  A change in the condition of confinement implicates a liberty interest only when the action creates deprivations which "work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences."  Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996).

In this case, the Plaintiff asserts that his placement in punitive segregation without the benefit of an attorney at his disciplinary hearing and the imposition of punitive segregation as following a hearing that in his words, he did not mentally attend, constitutes a violation of his constitutional due process rights.

Contrary to Plaintiff's arguments, however, courts routinely hold that a transfer to segregated confinement is not an "atypical and significant hardship" that would create a protected liberty interest triggering due process protection.  See Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002); Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) (finding denial of visitation, exercise privileges, and religious services during 37 day segregation did not give rise to a protected liberty interest); Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997) (determining that prisoner had no constitutionally protected liberty interest in remaining in less restrictive prison environment);  Kennedy v. Blankenship, 100 F.3d 640, 642 n. 2, 643 (8th Cir.

1996) (holding that punitive isolation was not atypical and significant deprivation even though prisoner faced restrictions on mail, telephone access, visitation, and commissary privileges); Roblero v. Barrios v. Minnesota Dep't of Corrs., 2011 WL 5154254, at *7 (D. Minn. Sept. 21, 2011)(stating that "assignment to [punitive] segregated confinement is considered to be a normal part of prison life."); King v. Dingle, 702 F.Supp.2d at 1075 (D. Minn. 2010) (finding 6 month segregation sentence not to constitute a dramatic departure from prison life); Wilson v. Harper, 949 F.Supp. 714, 723 (S.D. Iowa 1996) (finding that 11 months in segregation, including 6 months of punitive segregation was not a protected liberty interest giving rise to Due Process Rights).

Here, like in the cases cited above, the Plaintiff has not provided any admissible evidence showing that his placement in punitive segregation was so "atypical and significant" to trigger the Due Process clause. Even though Plaintiff contends that he has been in punitive segregation at least for 19 months,[2] (Amended Comp., p. 7), Plaintiff was not sentenced to 19 months punitive segregation as the result of a single disciplinary violation. Instead, the record shows that Plaintiff has received a number of separate, smaller sentences ranging from 240 days to five days spent in disciplinary segregation. (Green Aff., Ex. D). Each of these sentences can be viewed as separate punishments served in punitive segregation and do not constitute such a substantial departure from normal prison life. Even Plaintiff's lengthiest sentence of 240 days

---

[2] The Defendants do not contest this statement or provide an exact length of Plaintiff's time spent in disciplinary segregation. Instead, they simply allege that the Plaintiff has received a "significant amount" of time in disciplinary segregation. (Defs' Mem., pp. 4, 13). While Plaintiff's Amended Complaint alleges that he spent a total of 19 months in punitive segregation, Plaintiff now in his memorandum claims that he has been in punitive segregation for 3 consecutive years. (Pl's Mem. in Opp'n 21). However, Plaintiff has previously represented that he has been in punitive segregation since January 2009. (Objections to RR [Docket No. 49], p. 2). Plaintiff commenced his lawsuit in January 2010. Thus, by the Plaintiff's own allegations in his complaint as relevant to this lawsuit, he could not have spent more than 13 months in punitive confinement before the commencement of this suit. Nevertheless, because the Plaintiff is proceeding pro se and because on a summary judgment motion the Court must view all facts in the light most favorable to the non-moving party, the Court assumes that Plaintiff has spent at least 19 months in disciplinary segregation prior the commencement of Plaintiff's suit.

cannot be said to constitute an atypical and significant hardship in relation to the ordinary incidents of prison life.  See Hemphill v. Delo, 1997 WL at *2 (8th Cir.1997) (holding that more than 300 days in segregated confinement, by itself, was not sufficient to find a protected liberty interest).

Even assuming for the sake of argument that the Court should construe all of Plaintiff's separate disciplinary violations resulting in segregated confinement as one continuous period, Plaintiff has still not asserted enough admissible facts to show that such a period of segregated confinement departs from the normal incidence of prison life.  Other courts have found that being placed in segregation for similar lengths of time were not an atypical and significant hardship.  See Griffin v. Vaughn, 112 F.3d 703, 708 (3rd Cir. 1997) ("we believe that exposure to the conditions of administrative custody for periods as long as 15 months falls within the expected parameters of the sentence imposed ... by a court of law,"  and thus prisoner's "commitment to and confinement in administrative custody did not deprive him of a liberty interest and ... he was not entitled to procedural due process protection") (internal citations omitted);  Jones v. Baker, 155 F.3d 810, 812-13 (6th Cir. 1998) (determining that two and one-half years in administrative segregation deemed not to be an atypical and significant hardship); Rahman X v. Morgan, 300 F.3d 970, 973-74 (8th Cir. 2002) (twenty-six months of segregated confinement was not "atypical and significant hardship"); Jordan v. Federal Bureau of Prisons, 191 Fed.Appx. 639, 652-53 (10th Cir. 2006) (upholding summary judgment that dismissed prisoner's due process claim, because five years in administrative detention was not an atypical or significant hardship in relation to the ordinary incidents of prison life); Bunch v. Long, 2008 WL 5082861 *4 (W.D. Mo. Nov. 24, 2008) (twenty-two months in administrative segregation

did not support a finding of an atypical or significant hardship, which would implicate the Due Process Clause).

Granted, in some cases, the imposition of segregated confinement will require due process protections.  Williams v. Norris, 277 Fed.Appx. 647, 648-649 (8th Cir. 2008) (finding a twelve years in administrative segregation confinement was an atypical and significant hardship due to the particular restrictions imposed in relation to the segregation); Herron v. Schriro, 11 Fed.Appx. 659, 661-662 (8th Cir. 2001) (determining that the District Court found that the inmate's "lengthy confinement, for more than thirteen years, in administrative segregation, resulted in an atypical and significant hardship in relation to the ordinary incidents of prison life"); Wilkinson v. Austin, 545 U.S. 209, 217, 223-25 (2005) (determining that an atypical and significant hardship existed at "supermax" prison where, in addition to conditions similar to most in solitary confinement, placement is indefinite, is reviewed only annually after initial 30-day review, and disqualifies otherwise eligible inmate for parole consideration).  The Plaintiff's case, however, is distinguishable from those cases where segregated confinement constitutes an atypical and significant hardship.  Here, construing Plaintiff's various individual disciplinary confinements as a single period of confinement for the sake of argument only, Plaintiff received segregated confinement for 19 months.  While this is not an insignificant amount of time, it is exceptionally less than the twelve years of Williams and the thirteen years of Herron.  Moreover, as discussed above, Plaintiff's 19 months spent in punitive segregation was in actuality not the result of one act of misconduct but instead resulted from a number of separate and distinct violations imposed after hearings in front of a disciplinary officer.[3]  (Green Aff., Ex. B).

---

[3] Plaintiff contends that these hearings were improper because he was often suffering from severe mental illness. However, for the purposes of this discussion, the fact remains that his various periods of segregated confinement were not atypical nor did they constitute a significant hardship different than the normal incidents of prison life, and therefore no liberty interest was triggered requiring due process.

Instead, the Court finds that this case mirrors the claim in <u>Johnson v. Beard</u>, 2008 WL 2594034 (M.D. Pa. June 27, 2008). In that case, the prisoner raised an identical claim to that of the Plaintiff's now before this Court. Specifically, the prisoner in <u>Johnson</u> alleged that "Defendants violated his due process rights by placing him in punitive segregation lock-down for at least 1090 days as punishment for the symptoms of his mental illness." <u>Johnson</u>, 2008 WL 2594034, at * 6. However, the Court found that placing a prisoner in punitive segregation, even if he suffered from a mental illness, did not constitute an atypical and significant hardship creating a liberty interest protected by the due process clause. <u>Id</u>., at * 7. In the instant case, like in <u>Johnson</u>, the Plaintiff contends that his placement in punitive segregation for 19 months was punishment for having a mental illness. But, such placement does not create a protected liberty interest.

Plaintiff has not presented any admissible evidence that his time spent in punitive segregation was so restrictive that it was atypical and significant in relation to the ordinary incidents of prison life.[4] Plaintiff has, therefore, not created a genuine issue of material fact that he has a protected liberty interest to not be placed in segregated confinement for disciplinary

---

[4] Plaintiff contends that the restrictions of punitive segregation are more onerous than those of administrative segregation and prisoners in punitive segregation are allowed $20 dollars to purchase items from the canteen, only receive "county jail-like 'pajama' clothes," receive "ninja-style soft shoes," must use communal underwear and socks, are not allowed photographs, newspapers, and magazines, and cannot receive visits. (Pl's Mem. in Opp'n, p. 18). However, these limitations do not give constitute a significant and atypical hardship. <u>See</u> <u>Emil v. Crawford</u>, 125 Fed.Appx. 112, 112-13 (9th Cir. 2005) (finding that the denial of canteen privileges does not trigger due process rights); <u>Beverati v. Smith</u>, 120 F.3d 500, 502 (4th Cir. 1997) (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship); <u>Ind v. Colorado Dept. of Corrs.</u>, 2012 WL 161418 (D. Colo. Jan. 19, 2012)(restrictions on books and magazines does not violate a constitutional right); <u>Gordon v. Downs</u>, 175 Fed.Appx. 798, 798-99 (9th Cir. 2006)(affirming district court's finding that suspending visitation rights without a disciplinary hearing did not create an "atypical and significant hardship in relation to the ordinary incidents of prison life"); <u>Ware v. Morrison</u>, 276 F.3d 385, 387 (8th Cir. 2002) ("loss of visitation privileges is within the ordinary incidents of confinement and cannot be considered an atypical and significant hardship").

infractions which would give rise to a right to due process before being placed in segregation. On this claim, the Court recommends that the Defendants' summary judgment motion be granted.[5]

## IV.     EIGHTH AMENDMENT CLAIMS

Plaintiff claims that the Defendants violated his civil rights by "putting plaintiff in disciplinary, punitive isolation/solitary confinement for 3 years while having full knowledge from proceedings in Anoka county that this Plaintiff was in the deep throes of a mental health crisis." (Pl's Mem. in Opp'n, p. 3).[6] Plaintiff alleges 8th Amendment violations for cruel and unusual punishment because he was given punitive segregation as punishment for his severe mental illness and because he was given inadequate mental health treatment. (Statement of Claim [Docket No. 3]).

To demonstrate an Eighth Amendment violation, a prisoner must show that (1) he had an objectively severe medical need, and (2) prison officials, knew of, but deliberately disregarded the need. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). "[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation." Jolly, 205 F.3d at 1096 (quotation omitted). In addition, the "plaintiff must show more than negligence, more even than gross negligence." Alberson v. Norris, 458 F.3d 762, 765 (8th Cir. 2006).

Thus, in order to prevail on an Eighth Amendment claim based on improper medical care, "an inmate must show both an objective element, that the deprivation was sufficiently serious,

---

[5] The Defendant also contends that the Plaintiff's claims fail to exhaust administrative remedies and that the requirements of due process were met. Since the Court finds that Plaintiff has not created a genuine issue of material fact that he has a protected liberty interest in remaining outside of punitive segregation, the Court need not address those arguments,

[6] See fn. 2 above.

and a subjective element, that the defendant acted with a sufficiently culpable state of mind."

Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997).

Assuming for the sake argument that the Plaintiff's mental illnesses constitutes a serious medical need, the Plaintiff has still not submitted sufficient admissible evidence to survive a motion for summary judgment by showing that the Defendants acted with deliberate indifference to those medical needs by placing him in punitive segregation. Plaintiff's medical records submitted by the Defendants show that the prison has a mental health policy in place. Prison staff provide a variety of services to prisoners including psycho-education, one-to-one therapy, medication management, crisis management, suicide prevention, clinical and forensic assessments, psychotherapy, and psychiatric care. (Medchill Aff., ¶ 5). Offenders housed in the segregation unit are seen by mental health staff at least thirty days after entering the unit and every ninety days after that. Id., ¶ 7. Prisoners participating in therapy or receiving medications are seen more often either weekly, biweekly or monthly. Id. Anytime a prisoner wants to see a mental health staff member, he can send a kite requesting services and is placed on the schedule for a visit. Id.

Regarding Plaintiff's case specifically, his records show that he has received a variety of treatments including medication management, intervention by mental health staff, one-to-one psychotherapy, and psycho-education on anger management. (Medchill Aff., ¶ 11). Plaintiff has received regular mental care including regular assessments, psychiatric care and a range of psychological services. Id., ¶ 12. Moreover, the undisputed medical records submitted by Defendants show that during 2009 and 2010, Plaintiff received visits from mental health staff on a nearly weekly basis and was treated with medication. Id., Ex. B. In sum, the records provided by the Defendants show that the Plaintiff regularly received mental health care. See Roberson v.

Goodman, 293 F.Supp.2d 1075, 1081 (D. N.D. 2003) (finding that "[a] psychotic disorder that is being properly addressed with prescription medications does not constitute a serious medical need left untreated and ignored.")

In opposition, Plaintiff has not submitted any admissible evidence beyond his own mere assertions challenging the sufficiency of his mental health treatment. Plaintiff has not presented any medical evidence or expert testimony establishing that his medical needs are being ignored or that there is a serious risk of harm to him. Instead, Plaintiff relies on his own self-serving "Declaration of Explosive, Thunderous Dispute" [Docket No. 71] claiming that the Medchill Affidavit contains false information.[7]

However, Plaintiff's submitted evidence does not create a genuine issue of material fact. Plaintiff's own "self-serving, non-medical diagnosis is simply not sufficient to sustain his burden of proof." Robertson, 293 F.Supp. 2d at 1081. "A properly supported motion for summary judgment is not defeated by self-serving affidavits." Frevert, 614 F.3d at 473. Mere speculation that an affidavit is false or misleading is "insufficient to defeat a motion for summary judgment." Simms, 2009 WL 3160353, at *5. Thus, the Plaintiff has not created a genuine factual dispute by providing admissible evidence that a reasonably jury could return a verdict in his favor that the Defendants acted with deliberate indifference to Plaintiff's mental health treatment. Because Plaintiff has failed "to establish the existence of an element essential to [his] case," the Court recommends that Defendants' motion for summary judgment on this claim be granted. [8]

---

[7]Plaintiff further alleges that Paige Berg's treatment should not be given any weight because she was unlicensed. (Pl's Mem. in Opp'n, p. 16). However, the record demonstrates that unlicensed staff is supervised by state licensed employees. (Medchill Aff. ¶ 3). Plaintiff has not provided any authority, nor is the court aware of any case law, providing that such an arrangement is unconstitutional. In fact, case law supports the opposite. See Ruggia v. Kozak, 2008 WL 541290 (N.D. N.Y. Feb. 25, 2008).

[8] Plaintiff also argues that the punishments issued for the disciplinary violations were solely based on Plaintiff's mental illness. Thus, in effect, the prison punished Plaintiff for being mentally ill. However, the case relied on by the Plaintiff for this argument is distinguishable. In Inmates of Occoquan v. Barry, 717 F.Supp. 854 (D. D.C. 1989), the district court found that the treatment provided to medically ill inmates in punitive segregation was woefully

# VI.    CONCLUSION

**IT IS HEREBY RECOMMENDED THAT:**

1.  Defendant's Motion for Summary Judgment [Docket No. 99] be GRANTED; and

2.  Plaintiff's Motion for Summary Judgment [Docket No. 56] be DENIED.


Date:   February 14, 2012                    s/ Leo I. Brisbois_____
                                             Leo I. Brisbois
                                             U.S. MAGISTRATE JUDGE


## N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by February 28, 2012**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for

---

inadequate.  The Court noted that "the two psychologists there can barely keep up with emergencies, much less treat inmates for chronic problems. The psychiatric time is limited to two afternoons a week . . . and needs at least three more psychologists." Occoquan, 717 F.Supp. at 868.  Plaintiff has provided no evidence showing that similar conditions exist at MCF-OPH.  Moreover, Plaintiff appears to cite this case for the proposition that housing mentally ill prisoners in punitive segregation violates their constitutional rights.  (Pl's Mem. in Opp'n, p. 12).  However, Occoquan does not make such a broad holding.  Instead, the Court held that in situations like Occoquan where the prisoners were not receiving adequate medical care their Eighth Amendment rights were violated.  Here, Plaintiff has made no such showing nor has the Plaintiff provided any other authority broadly suggesting that mentally ill prisoners cannot be placed in punitive segregation for disciplinary violations.   In support of this argument, Plaintiff also outlines what he labels the "Puffer Plan" which is "very manipulative way to bury the vast majority of severely mentally ill MN D.O.C. Prisoners in punitive isolation for the majority of their prison sentence.  It is a several step program that is quite devious and very corrupt." (Pl's Mem. in Opp'n, p. 8).  Step one involves identifying mentally ill prisoners.  Id.  Next, according to the Plaintiff, prison officials administer step two by burying mentally ill prisoners in punitive segregation by ignoring alleged protocol requiring psych services to alert disciplinary officials that a mentally ill prisoner is having a crisis. Id., p. 9.  At step three, Plaintiff claims that mentally ill prisoners, who through disciplinary sanctions are now in punitive segregation, receive only phone talk therapy for mental health treatment.  Id., p. 11.  Finally, Plaintiff asserts that step four involves mental health officials providing the mentally ill inmate a diagnosis that calls for outpatient treatment or no serious treatment so that it appears the mentally ill prisoner is stable.  Id., p. 12.  Plaintiff has provided no independent, admissible evidence to support his contention that there is a broad based conspiracy orchestrated by Defendant Puffer to punish mentally ill prisoners by placing them in punitive segregation other than his own mere allegations and contentions.  Such "[n]aked assertions, unsubstantiated by the record," made in rebuttal do not amount to sufficient evidence to preclude summary judgment. Dutton , 136 Fed. Appx. 596.

in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.